FILED
2026 Jun-18  AM 08:39
U.S. DISTRICT COURT
N.D. OF ALABAMA

# UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ALABAMA
# SOUTHERN DIVISION

| | | |
|---|---|---|
| **REGIONS BANK,** *et al.* **,** | } | |
| | } | |
| **Plaintiffs,** | } | |
| | } | |
| **v.** | } | **Case No.:  2:25-cv-01772-MHH** |
| | } | |
| **MONTGOMERY TRANSPORT** | } | |
| **GROUP, INC.** *et al,* | } | |
| | } | |
| **Defendants.** | } | |

## MEMORANDUM OPINION AND ORDER

Nucor has moved for relief from the receivership order in this case. (Doc. 37). Nucor is a steel manufacturer that contracted with the defendants, the Montgomery Transport entities, to transport Nucor's products to customers. (Doc. 37, p. 3, ¶ 7). The Receiver contends that Nucor must pay the defendants' estate for the defendants' transportation services. (Doc. 37, pp. 4–5). Nucor seeks setoff and/or recoupment for the amounts it owes based on the Montgomery Transport defendants' failure to pay subcontracted carriers and the defendants' obligation to indemnify Nucor against customer claims. (Doc. 37, pp. 3–7; Doc. 56, p. 10). The Receiver opposes Nucor's motion; the Receiver argues that Nucor is in the same position as other unsecured creditors and may not setoff or recoup contingent, unliquidated claims against the estate's liquidated claims. (Doc. 50). The Court

1

held a hearing on this matter on April 16, 2026, and ordered supplemental briefing on choice of law issues.  (Docs. 82, 85, 86).

This opinion resolves Nucor's motion.  The Court first discusses the choice of law issues concerning Nucor's motion.  Then, consistent with that law, the Court considers whether Nucor's requests for relief qualify as recoupment and/or setoff. Finally, the Court identifies a procedure to resolve Nucor's requests for relief.

***

Generally, courts look to federal bankruptcy law and historical equity practice to interpret and implement a receivership order.  *See Sec. & Exch. Comm'n v. Quiros*, 966 F.3d 1195, 1199 (11th Cir. 2020) ("Given the similarity between bankruptcy and receivership proceedings, we often apply bankruptcy principles to receivership cases because we have limited receivership precedent."); *Bendall v. Lancer Mgmt. Grp., LLC*, 523 Fed. Appx. 554, 557 (11th Cir. 2013) ("Given that a primary purpose of both receivership and bankruptcy proceedings is to promote the efficient and orderly administration of estates for the benefit of creditors, we will apply cases from the analogous context of bankruptcy law, where instructive, due to limited case law in the receivership context.").

The Bankruptcy Code preserves the right of setoff, but 11 U.S.C. § 553 "does not create a right of setoff. . . . Substantive law, usually state law, determines the validity of the right."  *In re Patterson*, 967 F.2d 505, 509 (11th Cir. 1992) (citations

2

omitted), *abrogated in part on other grounds*, *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16 (1995) (finding that bank could freeze debtor's account pending resolution of setoff claim); *see also, e.g.*, *In re Esteva*, No. 23-14050, 2025 WL 2171062, at *7 (11th Cir. July 31, 2025) (citation omitted) ("Section 553 provides limits on the enforcement of state setoff laws—it 'does not create a right of setoff.'"). Similarly, the Bankruptcy Code does not create or limit a right of recoupment.[1]

As a federal court sitting in Alabama, this Court applies Alabama's conflict of law rules. *See, e.g.*, *Colonial Life & Acc. Ins. Co. v. Hartford Fire Ins. Co.*, 358 F.3d 1306, 1308 (11th Cir. 2004) ("A federal court in a diversity case is required to apply the laws, including principles of conflict of laws, of the state in which the federal court sits."). "Alabama law has long recognized the right of parties to an agreement to choose a particular state's laws to govern an agreement." *Cherry, Bekaert & Holland v. Brown*, 582 So. 2d 502, 506 (Ala. 1991).

The estate's right to payment from Nucor, if any, derives from the contracts between Nucor and the Montgomery Transport entities. (*See* Doc. 37, p. 7, ¶ 28; Doc. 50, p. 3, ¶¶ 5–7). The choice of law clauses in the contracts state that the

---

[1] The Bankruptcy Code does not mention recoupment, but recoupment has "long [been] applied in the bankruptcy context." 5 Collier on Bankruptcy ¶¶ 553.04, 553.10 (16th ed. 2026). Bankruptcy law places certain limitations on setoffs but not recoupment. *See* 11 U.S.C. § 553 (preserving setoff rights "except to the extent" that certain exclusions apply); 5 Collier on Bankruptcy ¶ 553.10 (16th ed. 2026) ("[A]s a general rule, the requirements and limitations of section 553 do not apply to recoupments."). The Receiver has not argued that the special exclusions in 11 U.S.C. § 553 for setoffs apply here; rather, the Receiver argues that there is no underlying state right to setoff or recoupment.

3

agreements "shall be governed by and construed in accordance with the laws of the State of Delaware" and that each party "expressly and irrevocably consents to the exclusive jurisdictions of the state and federal courts located in the State of Delaware . . . for any litigation which may arise out of or be related to this Master Agreement or any other agreement related hereto." (Doc. No. 37-1, pp. 17, 42, 92). The parties agree that under these clauses, Delaware law applies to Nucor's recoupment claims. (Doc. 85, p. 3; Doc. 86, p. 3, ¶ 4).

With respect to Nucor's requests for setoff, Nucor argues that Delaware law applies because the requests concern the master agreements. (Doc. 85, pp. 3–4). The Receiver disagrees. The Receiver argues:

> Nucor's alleged right to setoff is governed by Delaware law if its claims arise from the MTA and by Alabama law if they do not. This issue is not as straightforward as it seems because the supposed "carrier claims" allegedly giving rise to Nucor's right of setoff are not only contingent, unliquidated, and disputed, but the vast majority are actually unasserted. Nucor has provided no details concerning the carriers or the underlying claims in question and no analysis of how those claims are subject to the indemnification provisions of the MTA. It is therefore not possible to evaluate whether these hypothetical claims arise from the MTA, or if they are based on tort, or even if they are truly more of a "remedy" to counterclaim, which would require the Court to use the *lex fori* test, resulting in the application of Alabama law.

(Doc. 86, pp. 4–5).

The contingent, unliquidated, or disputed nature of Nucor's recoupment or setoff claims does not change the fact that the claims relate to the master agreements.[2]  To the extent that the Receiver suggests that Alabama law applies to all setoff claims because setoff is a remedy, the Court is not persuaded.  The choice of law provision in the master agreements is broad enough to cover demands for setoff where Nucor's liability and the amount it seeks to setoff are related to the master agreement.  Application of Delaware law also best accords with the parties' expectations and Alabama's general approach to conflict of laws.

The parties have not cited, and the Court has not found, an Alabama case that discusses conflict of law rules for setoff claims.  Generally, Alabama follows "the traditional view of the *Restatement (First) of Conflicts of Law*." *Ex parte U.S. Bank Nat. Ass'n*, 148 So. 3d 1060, 1070 (Ala. 2014) (citing *Fitts v. Minnesota Min. & Mfg. Co.*, 581 So. 2d 819, 820–23 (Ala. 1991)) (applying First Restatement rule of *lex loci delicti* to tort case).  Occasionally, the Alabama Supreme Court has cited the

---

[2] If Nucor intends to setoff amounts that do not relate to the master agreements, the company has not provided "facts from which the court could . . . determine[] which state's law might . . . appl[y]," so the Court will default to Alabama law for such claims.  *Sun Life Assurance Co. of Canada v. Imperial Premium Fin., LLC*, 904 F.3d 1197, 1207–09 (11th Cir. 2018) (explaining that district courts may default to forum law if the foreign law proponent fails to adequately plead application of foreign law).  Under the Eleventh Circuit's binding interpretation of Alabama law, a defendant may not setoff immature claims against mature ones, even in the event of bankruptcy. *In re Patterson*, 967 F.2d 505, 509 (11th Cir. 1992).  Because the Court does not believe the question is before it, the Court does not decide whether Alabama law or bankruptcy law would allow setoff for claims that mature during receivership proceedings.  *See* 5 Collier on Bankruptcy ¶¶ 553.04, 553.03[1][h][i]–[ii] (16th ed. 2026) (discussing possibility of contingent claims ripening).

Restatement (Second) of Conflict of Laws for narrow purposes. *See, e.g.*, *Foster v. Foster*, 304 So. 3d 211, 216 (Ala. 2020); *Ex parte Bentley*, 50 So. 3d 1063, 1070–74 (Ala. 2010).

Under the First Restatement,

> The law of the forum determines whether a claim of a defendant may be pleaded by way of set-off or counterclaim.

> **Comment**

> *a. When counterclaim alters effect of original transaction.* The rule stated in this Section is applicable to determine what disputes between the parties may be tried in the same action. It is not applicable[,] however, where to allow a set-off or counterclaim constitutes an alteration of the rights of the parties as determined by the original transaction. Thus, if a negotiable promissory note is executed and delivered to the payee and endorsed to a holder in due course in a state where such holder is not subject to any set-off or counterclaim which the maker might have against the payee, no such set-off or counterclaim will be allowed in an action between the holder and the maker although suit is brought in a state where such set-offs or counterclaims are generally allowed. Conversely, if a negotiable promissory note is made and endorsed to a holder in due course in a state where the holder is subject to a set-off which the maker has against the payee, such set-off will be allowed although suit is brought in a state where set-offs are generally not allowed.

Restatement (First) of Conflicts of Law § 593 & cmt. a.

Similarly, under the Second Restatement:

6

The forum will apply its own local law in determining whether a claim may be pleaded by way of set-off, counterclaim or other defense unless under the otherwise applicable law the defendant's claim, if allowed, would operate to qualify the plaintiff's claim in whole or in part. In the latter event, the defendant will be permitted to plead his claim as a defense.

### Comment

*a. Rationale.* Ordinarily, the question is simply whether the parties' claims against each other can be disposed of in a single action. In such a case, the local law of the forum governs and will be applied to determine whether the defendant may plead his claim against the plaintiff by way of set-off, counterclaim or other defense in the plaintiff's action. There are, however, the exceptional situations discussed in Comment *c*.

*b.* Whether the defendant may plead a claim by way of set-off, counterclaim or other defense must be distinguished from the question whether the defendant has a claim to assert. This latter question is determined by the otherwise applicable law. Suppose, for example, that an instrument in the form of a promissory note, which was executed and made payable in state X, is delivered and endorsed to a holder in X, who under X local law takes the instrument free from certain defenses that the maker might have against the payee. In a suit by the holder against the maker in state Y, the maker will not be permitted to assert such defenses against the holder, even though he will have been permitted to do so by the Y courts if his obligations under the instrument had been governed by Y local law (compare § 214). Conversely, the maker would be permitted by the Y courts to raise such defenses against the holder as are accorded him by X local law even though he would not have had such defenses if his obligations under the instrument had been governed by Y local law.

> *c. When defendant's claim qualifies plaintiff's claim.* Situations will arise where under the otherwise applicable law the defendant's claim, if allowed, would operate to qualify in whole or in part the plaintiff's claim. In such situations, the question is not simply one of avoiding two suits. Rather, the question is whether the plaintiff's claim against the defendant is reduced or extinguished by the defendant's claim against the plaintiff. In such situations, the defendant will be permitted to plead his claim as a defense.

Restatement (First) of Conflicts of Law § 128 & cmts. a, b & c.

In sum, under either Restatement's formulation, the underlying substantive law (here, Delaware) governs whether there is an underlying substantive right to setoff, while the law of the forum governs how this right should be pleaded, a procedural issue. For procedural issues, the relevant "forum" is federal court. *See, e.g.*, *Smith v. R.J. Reynolds Tobacco Co.*, 880 F.3d 1272, 1280–81 (11th Cir. 2018) ("In diversity of citizenship actions, state law defines the nature of defenses, but the Federal Rules of Civil Procedure provide the manner and time in which defenses are raised."). Neither the Federal Rules of Civil Procedure nor federal bankruptcy practice prohibits a party from asserting setoff as a defense or counterclaim if there is a valid claim for setoff under state law. *See* 5 Collier on Bankruptcy ¶¶ 553.03, 553.11 (16th ed. 2026). Accordingly, the Court applies Delaware law to resolve Nucor's setoff and recoupment claims.

\*\*\*

Both setoff and recoupment involve a defendant's attempt to reduce the amount the defendant owes a plaintiff by amounts the plaintiff owes the defendant. For this reason, parties sometimes use the terms "setoff" and "recoupment" interchangeably, even though the two doctrines are not identical. *See generally* 5 Collier on Bankruptcy ¶ 553.10 (16th ed. 2026).[3]  "[T]he chief distinction" between setoff and recoupment is "that the defense of set-off arises out of an independent transaction, but the defense of recoupment goes to the reduction of the plaintiff's damages for the reason that he, himself, has not complied with the cross obligations arising under the same contract." *Finger Lakes Cap. Partners, LLC v. Honeoye Lake Acquisition, LLC*, 151 A.3d 450, 453 (Del. 2016).

"[T]he fact that a single contract is involved does not suffice to demonstrate that the necessary transactional nexus exists" for recoupment. *TIFD III-X LLC v. Fruehauf Prod. Co.*, 883 A.2d 854, 864 (Del. Ch. 2004); *see also Finger Lakes*, 151 A.3d at 452, 454 (approving of *TIFD*'s analysis and stating that "the transactional nexus requirement under recoupment [is] tightly constrained").  If both claims relate to the same "contract[] involving [a] one-off transaction[], such as loans or sales of

---

[3] Nucor argues both setoff and recoupment in its motion and reply, (Doc. 37, pp, 10–11; Doc. 56, p. 3), but the Receiver did not address recoupment in its response, other than one reference to "recoupment or setoff," (Doc. 50, p. 7).  During the hearing, the Receiver argued that Nucor's recoupment claims fail for the same reason that Nucor's setoff claims allegedly fail.  In its supplemental brief on the conflict of laws question, the Receiver argued that Nucor's recoupment claims fail under Delaware law because the claims do not share a "common factual core" with the Receiver's claims.  (Doc. 86, pp. 9–10).

goods or services, . . . it is sensible to consider the plaintiff's own performance under the contract in evaluating its claim for damages against the defendant[;]" however, not all claims related to a contract establishing "a long-term, ongoing relationship" will be sufficiently related to each other for recoupment purposes. *TIFD*, 883 A.2d at 864 (not all claims related to partnership agreement sufficiently related); *see also Finger Lakes*, 151 A.3d at 451–52, 454 (finding that defendant could not use recoupment to subtract years of overdue unprofitable portfolio company management fees from plaintiff's share of proceeds from sale of profitable portfolio company, even though both claims were related to a term sheet governing the parties' overall relationship).

Nucor's unpaid carrier claims most likely qualify as recoupment claims. Nucor's contracts with the defendants provided that the defendants could ship products themselves or could subcontract the shipping to other carriers. (Doc. 37-1, pp. 3, 29, 54). In the latter scenario, the defendants agreed to pay the carriers, to require carriers to perform in accordance with the terms of their contract with Nucor, and to indemnify Nucor for claims by carriers. (*See, e.g.*, Doc. 37-1, pp. 3–4, 7, 13–14). Nucor asserts that the defendants are entitled to payment only "if they actually paid the freight carriers," i.e., if they performed their obligations under the contract. (Doc. 56, pp. 8–9, ¶ 26). For each shipment, the payments the defendants allegedly owed the carriers presumably are slightly lower than what Nucor would have owed

the defendants for the same shipment.  An individual shipment is equivalent to a "contract[] involving one-off transactions," *TIFD*, 883 A.2d at 864, even if the terms of those shipments are set in part by an overarching agreement.

Nucor's customer claims may require setoff in addition to recoupment.  For example, Nucor has asserted claims for shipments which were not actually delivered or which were damaged in transit.  (*See* Doc. 37, pp. 4–5, Doc. 37-1, p. 102).  In these cases, the amount the Montgomery Transport defendants owe Nucor may be more than Nucor owes the defendants for the shipment.  For each shipment, Nucor may assert recoupment up to the amount Nucor owes the Montgomery Transport defendants on that specific shipment.  If Nucor wishes to credit excess damages from one shipment against the amount it owes the defendants on other shipments, Nucor must meet the requirements for setoff, not just recoupment.

***

The Receiver argues primarily that Nucor may not setoff or recoup its losses because the losses are contingent, unmature, or unliquidated.  (Doc. 50, pp. 5–7, ¶¶ 8–11).  Nucor does not dispute that its right to recoupment or setoff is contingent upon whether it is liable to the carriers or its customers.[4]

---

[4] The Receiver does not dispute that, even though the Montgomery Transport defendants—not Nucor—contracted with the carriers, state law may make Nucor liable for nonpayment unless the defendants had the carriers expressly release Nucor from liability. (Doc. 37, pp. 6, 8–9, ¶¶ 20–24, 31–36; Doc. 50, p. 7, ¶ 12; Doc. 79, p. 1, ¶ 4).  Nucor has represented, and the Receiver has not disputed, that carriers have been asserting damages claims against Nucor, that the Receiver has not provided confirmation to Nucor of whether other carriers have been paid, that the Receiver has

11

The general common-law rule, which Delaware appears to follow, is that recoupment claims need not be liquidated or mature to be asserted. *See, e.g.*, *Shimp v. Siedel*, 11 Del. 421, 426 (Del. Super. Ct. 1881) ("[R]ecoupement is allowed though both demands are unliquidated damages, for when the demands of both parties spring out of the same contract or transaction, the defendant may *recoupe*, although the damages on both sides are unliquidated; but he can only *set-off* when the demands of both parties are liquidated or capable of being ascertained by calculation."); 80 C.J.S. Set-off and Counterclaim § 32 ("Unliquidated damages may be recouped, provided they arise out of the transaction forming the basis of the plaintiff's action."); 6 Charles A. Wright & Arthur R. Miller,  Federal Practice & Procedure § 1401 (3d ed. Apr. 2026 update) ("[T]he utility of setoff [as compared to recoupment] was limited by the requirement that the claim either be for a liquidated amount or arise out of a contract or judgment."); 5 Collier on Bankruptcy ¶ 553.10 (16th ed. 2026) (footnotes omitted) ("Recoupment often arises in contract cases, but it is not limited to contractual obligations, nor must the amount to be recouped be liquidated in order for the right to apply.  Mutuality is also not required, and the relevant obligations need not both be prepetition in nature. . . . [P]roperly construed,

---

not provided information to Nucor regarding contracts between the defendants and the carriers, and that Nucor does not have access to this information.  (Doc. 37, p. 9, ¶ 35; Doc. 79, p. 2, ¶¶ 9–10).  The Court will not require Nucor to prove the absence of payments or the contents of contracts Nucor is not a party to without an opportunity for reasonable discovery.  The carriers currently are not parties to this proceeding, so the carriers' claims against Nucor are not before this Court, and the Court does not purport to resolve those claims.

recoupment applies to define the obligation in question, rather than establish or enforce a separate debt."); *Matter of Holford*, 896 F.2d 176, 178 (5th Cir. 1990) ("We also reject the district court's holding that the uncertainty of the fraud damages owed bars recoupment. Because most recoupment cases arise in adversarial proceedings in the bankruptcy court, the 'amount to be recouped' is almost always in question."); *United States v. Bank of Shelby*, 68 F.2d 538, 539 (5th Cir. 1934) ("But there is present here another potent fact [justifying crediting of plaintiff's unmature debt against defendant's obligation to plaintiff], that the two obligations arose out of the same transaction and the one is the consideration for the other. It would be manifestly inequitable to enforce one obligation when the other cannot be enforced."); *Matter of Kosadnar*, 157 F.3d 1011, 1016 (5th Cir. 1998) (citation omitted) ("[A] debtor may not assume the favorable aspects of a contract (post-petition payments) and reject the unfavorable aspects of the same contract (the obligation to repay pre-petition overpayments by means of recoupment).").[5] This makes sense given that, under common law, a plaintiff who partially performed contractual obligations was not due payment unless the defendant prevented the plaintiff's full performance (in which case the defendant would have to institute a separate action for recoupment, until the courts reformulated recoupment as a

---

[5] Fifth Circuit cases decided before October 1, 1981, are binding precedent in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir. 1981) (en banc).

13

defense to avoid "circuity and multiplicity of action"). *Shimp*, 11 Del. at 424–28 (explaining origins of recoupment in Delaware). Accordingly, Nucor may assert its recoupment claims, regardless of whether those claims are contingent, unmature, or illiquid.

As for Nucor's setoff claims, under the general common-law rule, followed by Delaware and most courts nationwide, a party ordinarily may not setoff contingent, unmature, or unliquidated losses. *See, e.g.*, *CanCan Dev., LLC v. Manno*, No. CIV.A. 6283-VCL, 2011 WL 4379064, at *5 (Del. Ch. Sept. 21, 2011) ("A contingent or unmatured obligation which is not presently enforceable cannot be the subject of set-off.").

Still, as a matter of common law or equity, courts have long recognized an exception for when one party becomes insolvent. *See, e.g.*, *Bank of Shelby*, 68 F.2d at 539 (citations omitted) ("The general rule in the absence of statute is that to set off an unmatured debt because of insolvency requires the action of equity; but that insolvency alone is a sufficient basis in equity for the set-off not only as between the parties but as against a receiver, an assignee for the benefit of creditors, a trustee in bankruptcy, or a garnisher."); *Carr v. Hamilton*, 129 U.S. 252, 256 (1889) ("[T]he principle of set-off between mutual debts and credits has for nearly two centuries past been adopted in the English bankrupt laws, and has always prevailed in our own whenever we have had such a law in force on our statute book; and it mattered not

14

whether the debt was due at the time of bankruptcy or not. . . . [A] settlement of the company's affairs cannot be postponed to await the determination of every contingency on which its policy engagements are suspended.  This would postpone a settlement for at least half a century.  [But e]very person's interest in life insurance is capable of instant and present valuation, almost as certain and determinate as the discount of a note or bill payable in the future."); *Am. Bank & Tr. Co. v. Morris*, 16 F.2d 845, 847 (5th Cir. 1927) ("There is no doubt that the general rule is that a bank has the right to set off a deposit made in the usual course of business against loans to the depositor, at maturity or in case of his insolvency, and may do so even in the event of bankruptcy.").

The Receiver has not pointed to (and the Court is not aware of) a Delaware case holding that contingent debts are necessarily barred from setoff against even an insolvent party.  At least one Delaware court appears to have noted, albeit possibly in dicta, that setoff of contingent claims is appropriate in some circumstances.  *Fell v. Sec. Co. of N. Am.*, 95 A. 346, 347–49 (Del. Ch. 1915) (noting setoff was "properly applied" to contingent debt in *Carr* but that "its applicability depends upon the facts in each case," and denying setoff where setoff proponents and others had invested money into company bonds and setoff proponents had then borrowed money against the bonds).  Accordingly, the Court finds that Delaware allows setoff of contingent or illiquid claims when the other party is insolvent, subject to equitable

15

considerations.  *Cf. Brook v. Chase Bank USA, N.A.*, 566 Fed. Appx. 787, 789–90 (11th Cir. 2014) ("As long as Florida law neither mandates nor prohibits set off under the FCCPA—and it does not—it is entirely within the bankruptcy court's discretion whether to allow set off under the circumstances of the case.").

As noted above, federal bankruptcy or receivership law does not present an obstacle to setoff.  Modern bankruptcy laws do not state how to treat contingent setoff or recoupment claims, but the laws allow contingent or unliquidated claims generally.  11 U.S.C. §§ 101(5), 502(b)(1).  The value of contingent or unliquidated claims may be estimated so as not to unduly delay the bankruptcy proceedings, and the estimated value may be adjusted later as necessary.  11 U.S.C. § 502(c), (j); *In re Stone & Webster, Inc.*, 279 B.R. 748, 811 (Bankr. D. Del. 2002).

Accordingly, in the bankruptcy context, many courts have held that setoff or recoupment may be applied to contingent, unmature, or unliquidated claims where allowed by state law.  *See, e.g.*, *Newbery Corp. v. Fireman's Fund Ins. Co.*, 95 F.3d 1392, 1398 (9th Cir. 1996) (ellipses in *Newbery Corp.*) (quoting 4 *Collier on Bankruptcy* ¶ 553.01[4], at 553–6 (15th ed. 1995)) ("[A] claim may ... be set off without regard to whether it is contingent or unliquidated, as long as the claim qualifies as 'mutual' under applicable nonbankruptcy law...."); *Braniff Airways, Inc. v. Exxon Co., U.S.A.*, 814 F.2d 1030, 1034–36 (5th Cir. 1987) (holding that opposing debts were mutual, prepetition debts subject to setoff even though the actual amount

16

creditor-seller owed debtor-buyer was not calculated before petition was filed because "to say that [the seller] did not have a pre-petition debt to [the buyer] would be to say that [the seller] could have retained the fuel prepayment funds and not have delivered any fuel to [the buyer]"); *In re Hoffman*, 51 B.R. 42, 46 (Bankr. W.D. Ark. 1985) ("[T]he filing of a bankruptcy acts to accelerate the maturity of all debts and, therefore, the right of setoff may be asserted postpetition."); *In re GMJ Glob. Logistics, Inc.*, 498 B.R. 290, 292–93, 297 (Bankr. D. Kan. 2013) (allowing shipper to setoff settlements of carrier claims against shipper's liability to shipping-broker-debtor).[6]

When the requirements for setoff are met, "[t]he district court [still] has discretion whether to allow a setoff against a receiver, and this decision will be

---

[6] At the hearing, based on *In re Patterson*, 967 F.2d 505, 509 (11th Cir. 1992), the Receiver argued that there was no mutuality under Alabama law. The Court need not address this argument because the Court is not applying Alabama law. To the extent the Receiver intended to argue that there is no mutuality under federal bankruptcy law because Nucor's indemnification claims accrued after the receivership order, federal courts of appeal that have addressed the issue have rejected the idea that the critical time is claim accrual. *See* 5 Collier on Bankruptcy ¶ 553.03[1][b] (16th ed. 2026) (providing overview of different tests). The Eleventh Circuit uses the "relationship test" in determining whether debts are pre-petition. *Epstein v. Off. Comm. of Unsecured Creditors of Est. of Piper Aircraft Corp.*, 58 F.3d 1573, 576–77 (11th Cir. 1995); *In re United States Pipe & Foundry Co.*, 32 F.4th 1324, 1330 (11th Cir. 2022). Like the "conduct test," this test focuses on "when the [debtor's] conduct giving rise to the alleged liability occurred," but adds the requirement that there be a "relationship established before [bankruptcy plan] confirmation between an identifiable claimant or group of claimants and that prepetition conduct," i.e., with the debtor. *Epstein*, 58 F.3d at 1577. Here, the parties had a preexisting relationship. The defendants' conduct gave rise to Nucor's recoupment and setoff claims because the defendants did not fulfill their preexisting contractual obligations to pay carriers and ensure shipments were delivered safely. Nucor's claims are thus not post-petition; the claims would be post-petition if the parties had arranged for post-receivership shipment brokerage services.

overturned [only] for an abuse of discretion." *S.E.C. v. Elliott*, 953 F.2d 1560, 1572 (11th Cir. 1992). There is a "strong federal policy towards . . . . [and] practically a presumption in favor of allowing setoff." *Elliott*, 953 F.2d at 1572. If a claim is eligible for setoff, "[t]he burden is on the party moving to deny setoff to prove that setoff should be denied." *Elliott*, 953 F.2d at 1572. Thus, to the extent Nucor's contingent claims materialize or can be estimated, and are eligible for setoff, the equities weigh in favor of allowing setoff.

The Receiver faults Nucor for not immediately forfeiting all disputed funds and asserting its claims in the ordinary claims process. (Doc. 50, p. 3–4, 8–9, ¶¶ 3–4, 15–17). In a situation like this, where a party asserts the right to recoupment or setoff, that party may petition the court for relief from or a modification of the receivership order. *See* 11 U.S.C. § 362(d)–(g) (allowing a party to request relief from a bankruptcy stay); 11 U.S.C. § 542(b) ("[A]n entity that owes a debt that is property of the estate and that is matured, payable on demand, or payable on order, shall pay such debt to, or on the order of, the trustee, except to the extent that such debt may be offset under section 553 of this title against a claim against the debtor."); *Citizens Bank of Maryland v. Strumpf*, 516 U.S. 16, 19–21 (1995) (finding that bank could properly freeze deposit account of insolvent depositor until court determined whether the bank had a right to setoff the deposit account against the amount the depositor owed the bank).

18

And while setoff is subject to an automatic bankruptcy stay per the express terms of 11 U.S.C. § 362(a)(7), the majority view is that recoupment is not ordinarily subject to an automatic bankruptcy stay because it is essentially a defense to the debtors' claims; i.e., the funds subject to recoupment are not the debtors' property in the first place, and thus need not be turned over without court order. *See, e.g.*, *In re Holford*, 896 F.2d 176, 179 (5th Cir. 1990) ("[T]o the extent the damages equal or exceed the funds withheld, the debtor has no interest in the funds and, therefore, the stay has not been violated."); *Matter of Kosadnar*, 157 F.3d 1011, 1014 (5th Cir. 1998) (citation omitted) ("[M]oney recouped by creditors from an amount owed to a debtor post-petition would not be subject to the automatic stay.").[7]

***

Accordingly, the Court orders the Receiver to produce the defendants' carrier contracts and carrier payment records to Nucor. The Receiver and Nucor shall attempt to reconcile amounts which are subject to recoupment or setoff in accordance with this opinion. For carriers that have not been paid, the Receiver and Nucor shall presume that payments are subject to recoupment unless the Receiver can show that the carrier contracts or the law that applies to a carrier contract will not allow the carrier to recover against Nucor. To the extent that shipments have not

---

[7] The best practice would be for the party asserting recoupment to promptly seek guidance from the Court, especially where, as here, the liabilities of the party are contingent or illiquid, and thus in need of determination or estimation.

19

been delivered, the Receiver and Nucor shall presume that Nucor owes no payment for that contract, and Nucor may seek setoff of the balance of the value of the shipment against other contracts for which there is mutuality of parties. To the extent that Nucor has actually incurred other damages, such damages may be recouped against the amounts due on the same contract or setoff against the amounts due on other contracts if there is mutuality of parties. To the extent that other damages are probable but have not occurred or there is substantial uncertainty as to any of the above items, the parties shall attempt to mutually estimate the value of the claim.

Nucor shall keep custody of the presumed and estimated amounts of recoupment and setoff and promptly remit the remainder to the Receiver. For disputes, Nucor shall not finalize recoupment or setoff on its records until the disputes are resolved. If the presumed or estimated amount of recoupment or setoff later proves inaccurate, the party retaining the excess funds shall remit such excess funds to the other party monthly. Until a final resolution is reached, the Receiver takes funds subject to Nucor's setoff and recoupment rights, if any. Accordingly, each party shall take reasonable steps to preserve funds which may later be remitted to the other party. To preserve property which may ultimately revert to the estate, Nucor shall not settle carrier claims without prior approval from the Receiver or this Court.

**DONE** and **ORDERED** this June 17, 2026.

_Madeline H. Haikala_
**MADELINE HUGHES HAIKALA**
UNITED STATES DISTRICT JUDGE

21